## TAMASERIC v. BECKWITH.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1911.)

1. MASTER AND SERVANT (§ 137*)—INJURY TO SERVANT—NEGLIGENCE—METHOD OF DOING WORK.

The method followed by direction by the master for placing in a trench iron pipes, each weighing 5,000 pounds, was to place over the trench, where the surface of the ground was soft, two skids, with a cleat nailed on one of them over the center of the trench, lower the pipe from the side hill above the trench, by ropes around trees, till the pipe struck the wedge, then let go the ropes; then place a four legged derrick over the pipe, and by means of it and a sling raise the pipe off the skids, and, the skids being removed, lower it into the trench. *Held*, the method was improper and dangerous, making the master liable for injury to a servant injured, while placing the derrick in place, by the skid, on which was the cleat, turning over, allowing the pipe to roll further.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 137.*]

2. APPEAL AND ERROR (§ 1070*)—HARMLESS ERROR—FINDINGS.

Defendant in action for injury to his servant cannot complain of the answer in the negative to the question submitted to the jury: Did defendant furnish to his servants reasonably proper and safe tools and appliances, though there was no evidence that he did not furnish proper tools, the conclusion that he did furnish proper appliances being justified, and the court not having been asked to distinguish between tools and appliances.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1070.*]

3. MASTER AND SERVANT (§ 107*)—INJURY TO SERVANT—IMPROPER "APPLIANCES"—EMPLOYER'S LIABILITY ACT.

As regards the question of furnishing proper appliances, skids laid over a trench and onto which iron pipes are rolled, to rest there till raised and lowered into the trench by means of a derrick, are appliances within the meaning of the employer's liability act (Consol. Laws 1909, c. 31, §§ 200–204).

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 107.*

For other definitions, see Words and Phrases, vol. 1, p. 455; vol. 8, p. 7578.]

4. MASTER AND SERVANT (§ 252*)—INJURY TO SERVANT—EMPLOYER'S LIABILITY ACT—NOTICE.

The notice under the employer's liability act (Consol. Laws, 1909, c. 31, §§ 200–204) of injury to an employé, stating that the master failed to provide and adopt a proper and safe method of work, need not state that the improper method of doing the work had been adopted by defendant's superintendent, rather than by defendant; the superintendent, so far as appears, having been the alter ego of defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

Appeal from Trial Term, Onondaga County.

Action by Rade Tamaseric, administrator of Adam Tamaseric, deceased, against Clinton Beckwith. From a judgment on a verdict for plaintiff, and from an order denying a motion for a new trial made on the minutes, defendant appeals. Affirmed.

The action was commenced on the 4th day of September, 1909, to recover damages resulting from the death of plaintiff's intestate alleged to have been caused solely through the negligence of the defendant. Recovery is sought under the provisions of the employer's liability act (Consol. Laws 1909, c. 31, §§ 200–204), so called, and also upon the principles of the common law. It is urged on behalf of the appellant that the notice served in alleged compliance with the requirements of the employer's liability act is insufficient, and therefore that no recovery can be predicated upon the provisions of that act; also, that the complaint did not allege any cause of action which the evidence tended to establish. The appellant also contends that under the employer's liability act or at common law there was no evidence which tended to prove actionable negligence as against the defendant.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

A. H. Cowie, for appellant.
Clifford H. Searl, for respondent.

McLENNAN, P. J. So far as the physical facts are concerned, and the manner in which the work was being done, which resulted in the accident, there is hardly a controversy. The accident which is the subject of this litigation, and which resulted in the death of plaintiff's intestate, occurred on the 22d day of July, 1909. At the time of the accident, the deceased, who was a common laborer in defendant's employ, was engaged with a number of other employés, constituting what is called a gang, in laying 30-inch cast iron pipes, weighing about 5,000 pounds each, in a trench, which pipes when laid in such trench were to be a part of a system to convey water from Skaneateles Lake to the city of Syracuse, being done under defendant's contract, which comprised several miles of such work. One Perkins was the general superintendent in charge of the work, but the evidence clearly shows that one Reynolds was in charge of the particular job in question, and was acting as superintendent at the time of the accident. It clearly appears that he had authority to direct as to the method of doing the work, and that the deceased and all the other employés under him were subject to his control and command.

It appears without contradiction that the ditch which had been constructed by another gang of laborers was located upon what may be called a side hill, the pipes to be placed in such ditch being distributed along the top, and the incline from the place where such pipes were left to the farther edge of the ditch was about 40 degrees. The method employed by defendant's superintendent to get these pipes into the ditch was substantially as follows: Two skids about 14 feet long and 6 inches square were placed over the top of the ditch at an incline, as we have said, of about 40 degrees, and extending up the bank toward the place where the pipes were located. These two skids, so called, placed immediately over the ditch, were at each end laid on the surface of the ground, and, as the evidence tends to show, in soft ma-

terial. There was a cleat or wedge nailed on one of the skids at a point immediately over the center of the ditch. The evidence also tends to show that the skid on which such wedge was nailed was winding or out of true. Such skids being thus placed in position and resting, as we have seen, upon the surface of the ground, or upon dirt recently thrown out of the trench, defendant's employés were directed by the superintendent to lower one length of pipe from the brow of the hill. That was done as was the custom by putting ropes around the pipe, taking a half-hitch around a tree, there being plenty of them on the bank, and letting the pipe down the incline and on to the skid until such pipe struck the wedge on one of the skids, which was immediately over the center of the ditch. When that point had been reached with the pipe, the foreman or superintendent gave orders to the men to let go of the rope, which they did. Then plaintiff's intestate under the direction of the superintendent sought to place a four-legged derrick over the pipe, two legs on each side of the trench, it being intended when such derrick was properly placed with a sling about the pipe to raise it by means of the derrick, take out the skid from under it, and then to lower it to the bottom of the trench. While plaintiff's intestate was thus engaged in placing the derrick, the skid upon which there was a wedge turned over on its side, leaving the pipe without any wedge to hold it in place, and it went down on the 42 per cent. grade across the ditch, struck the legs of the derrick, one of the legs of which struck the plaintiff's intestate in the chest, and caused such injuries that he died shortly thereafter.

[1] First. The claim of the plaintiff is that the defendant adopted a dangerous method of doing the work in question. It is insisted, and at least two experts testify, that the ropes attached to the length of pipe and which were snubbed about the trees upon the bank should have been kept taut until such pipe had been made secure to the derrick. The respondent urges that the method of doing the work was improper, because the ropes were loosened before the pipe was secured to the derrick, and also because it was sought to trust a small wedge upon one of the skids, laid upon the loose earth or ground, to hold the weight of 5,000 pounds in place upon an incline of forty degrees or more. We think that upon all the evidence upon that branch of the case the jury were justified in finding the questions submitted to them by the learned trial court adversely to the defendant. In other words, were justified in finding that the methods employed, and which were dictated by defendant's superintendent, were not reasonably safe and proper, but were negligent. The situation should be perfectly understood: According to the evidence, the method employed to do the work in question was to place two skids resting upon loose dirt at either end across the ditch at an incline of at least forty degrees, extending up the hill. Then to lower upon such skids a length of pipe weighing about 5,000 pounds, trusting to a wedge nailed to one of them to hold it in place until it could be made secure with a derrick, which was to lift it from such skid, and then lower it into position in the bottom of the trench. If the ropes had not been dropped as directed by defendant's superintendent, there could have been no question but that the pipe would have been held in position until it had been made

fast to the derrick, and the accident would not have happened. It would almost seem that ordinary common sense would have suggested that the method adopted was improper and dangerous in the extreme. The only reason suggested why the length of pipe should not have been held in place by the ropes, instead of trusting to a wedge nailed to one of the skids, which rested upon the loose earth and was therefore liable to turn, and thus leave the pipe without anything to prevent it from starting down the incline, is that it would be difficult and dangerous to lift the leg of the derrick over the rope if it had remained taut. We think there is no force in the suggestion.

[2] The learned trial court also submitted to the jury the question:

"Did the defendant furnish its servants on the job in question reasonably proper and safe tools and appliances to do the work in an ordinary safe manner?"

The jury answered such question in the negative. We think that under the evidence the question was properly answered. While there is no evidence tending to prove that the defendant did not furnish proper tools, we think the evidence does justify the conclusion that he did not furnish proper appliances. But the court was not asked to distinguish as between tools and appliances, and, if the jury could properly have answered that proper appliances were not furnished, he cannot complain because there was no evidence tending to prove that proper tools were not so furnished.

[3] This involves the proposition as to whether fairly the skids laid across the trench in question may be properly considered as an "appliance" within the meaning of the employer's liability act. If four skids had been laid across such trench, and had been used as a means of getting the pipes on to the trench, there could be no question but that such would be an "appliance," in the same sense that a scaffold has been held to be an appliance. We think that these two skids, which had been habitually placed across the trench in question, may properly be regarded as an "appliance"; that they were not proper for the purposes intended we have seen, and the jury were justified upon all the evidence in answering the question as they did.

We conclude, therefore, upon this branch of the case, that the method adopted by the defendant under the direction of his superintendent of lowering the pipe into the trench was dangerous and unsafe, and that in adopting such method defendant's superintendent was guilty of negligence because of which the defendant is liable for the damage sustained because of the death of the plaintiff's intestate. We also conclude that the two skids which were directed by the defendant's superintendent to be laid across the trench for the purpose of receiving the cast iron pipe were an "appliance," and that under all the circumstances the jury were justified in finding that such appliance was not reasonably proper and safe to do the work in an ordinary safe manner.

[4] The only remaining question which need be considered is whether the notice claimed to have been served in compliance with the provisions of the employer's liability act was sufficient. Among other things, such notice states that the defendant failed to provide suffi-

cient means for handling said pipe, and that he failed to provide and employ and adopt a proper and safe method of work. It would seem that the defendant was specifically informed that it would be sought to charge him with negligence on the ground that an improper method of doing the work in which plaintiff's intestate was engaged had been adopted. We do not think that it was necessary to state in the notice that the improper method of doing the work had been adopted by the defendant's superintendent rather than by the defendant himself. The failure of defendant's superintendent was defendant's failure. The superintendent, so far as appears by the evidence in this case—the man in charge of the work and who had absolute control of the actions of all of the employés—was the alter ego of the defendant, and his negligence was defendant's negligence. Bertolami v. United Eng. & Con. Co., 198 N. Y. 71, 91 N. E. 267. See, also, Sienbida v. Tonawanda Board & Paper Co., 121 App. Div. 70, 105 N. Y. Supp. 513; Hurley v. Olcott, 134 App. Div. 631, 119 N. Y. Supp. 430.

I conclude that the notice was sufficient. In my opinion it is unnecessary to consider whether there was any liability established at common law, because, as it is claimed, there was a defective skid furnished for doing the work.

It follows, therefore, that the judgment and order appealed from be affirmed, with costs.

Judgment and order affirmed, with costs. All concur. KRUSE, J., in a separate memorandum.

KRUSE, J. (concurring). I concur upon the ground that upon the evidence the jury could properly find the defendant negligent respecting the method of doing the work and in superintending the same. I do not think the finding of negligence can be sustained in failing to furnish proper tools or appliances, excepting so far as there may have been negligent superintendence in placing the skids and method of doing the work; and, while the charge may not be very clear upon that point, that I think is the effect of it.